UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK EUGENE TYSON, | ) | Case No. 5:09CV1754 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | JUDGE SOLOMON OLIVER |
| | ) | (Magistrate Judge McHargh) |
| BENNIE KELLY, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The petitioner Frank Eugene Tyson ("Tyson") filed a petition for a writ of habeas corpus arising out of his 2000 convictions for kidnapping, burglary, and other charges, in the Stark County (Ohio) Court of Common Pleas. (Doc. 1.) In his petition, Tyson raises two grounds for relief:

   1. Prosecutorial misconduct for withholding exculpatory evidence in violation of the Fourteenth Amendment.

   2. Ineffective assistance of trial counsel for failing to timely discover, analyze, understand, appreciate and/or effectively present the newly-discovered evidence on which Petitioner relied in his post-conviction motion and petition.

(Doc. 1.) The respondent has filed a motion to dismiss the petition as time-barred (doc. 7), and Tyson has filed an opposition (doc. 8).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural background:

> On July 28, 2000, the Stark County Grand Jury indicted appellant on one count each of kidnapping in violation of R .C. 2905.01, a felony of the second degree, burglary in violation of R.C 2911.12, a felony of the second degree, failure to comply with the order or signal of a police officer in violation of R.C. 2921.331, a felony of the third degree, receiving stolen property in violation of R.C. 2913.51, a felony of the fourth degree, and grand theft of a motor vehicle in violation of R.C 2913.02, a felony of the fourth degree. At his arraignment on August 4, 2000, appellant entered a plea of not guilty to the charges.
>
> A jury trial commended on October 26, 2000. The following testimony was adduced at trial.
>
> A red truck was stolen from Dana Novelli on East Tuscarawas Street in Canton, Ohio when Novelli stopped to investigate two sweepers sitting on the side of the street. According to Novelli, a black male walked past him and apparently entered Novelli's truck and proceeded to drive away. Novelli attempted to cling to the vehicle, but was unable to prevent the theft.
>
> Subsequently, State Highway Patrolman William Haymaker observed the truck and a chase ensued. During the chase, the truck went over an embankment into a strip mine and into the back entrance of Republic Steel. A white truck located on Republic's plant area was then taken and driven through a police barricade. Trooper Joel Smith of the State Highway Patrol, who was positioned outside of the Republic Steel plant in his cruiser, followed the white truck and observed it violate several traffic control devices and strike parked cars, two houses and a utility pole. After hitting the pole, the truck stopped and the driver exited the same and proceeded on foot with Patrolman Smith in pursuit. Testimony was adduced at trial that the

driver ran into a house occupied by Latonya Hill[1] and her minor children, Brittany and Dwyone, on Second Street N.E., and then seized Brittany and used her as a shield before the Patrolman. The police arrested the man, who was identified as appellant, as he was fleeing the residence.

Appellant testified at trial that he was not the thief, but had been standing on the street when sprayed with mace by the patrolman and was merely fleeing such unwarranted attack when he entered the Hill home with consent. Appellant was identified by both Brittany Hill and her brother, who also verified the patrolman's version as to the events in the home. Dwyone Hill had also observed appellant leave the crashed truck prior to entering his home. Latonya Hill, according to the children, was asleep on the second floor during these events.

After the jury found appellant guilty of all of the counts contained in the indictment, the trial court, as memorialized in a Judgment Entry filed on November 6, 2000, sentenced appellant to a total of twenty-four (24) years in prison.

Appellant then appealed his conviction and sentence. Pursuant to an Opinion filed on September 24, 2001, in State v. Tyson, Stark App. No.2000CA00361, 2001-Ohio-1382, this Court affirmed appellant's conviction and sentence.

Thereafter, on November 26, 2007, appellant filed a "Motion for Criminal Rule 33(B) 'Unavoidably Prevented' Findings and for New Trial." Appellant, in his motion, claimed that he was unavoidably prevented from timely filing his motion for a New Trial and that he was unavoidably prevented from discovering the newly discovered evidence upon which he based such motion. Appellant based his motion on videotapes played by the Prosecution at trial and prepared by Ohio State Highway Patrol Troopers. The videotapes were taken from VCRs in the cruisers of Ohio State Highway Patrol Troopers Haymaker and Smith. Trooper Haymaker testified at trial that the two made copies of the two tapes taken from their cruisers and put them onto one tape. Appellant claimed that the videotapes exonerated him because, when played separately rather than spliced together as they were at trial, they show that Trooper Smith, who was the State's

---

[1] [In his brief on appeal, Tyson states that Latonya Hill is his cousin. (Doc. 7, RX 5, at 13 n.3.)]

3

sole eyewitness to identify appellant as the thief, was in fact four miles away when the white truck crashed and its operator fled on foot. Appellant also relied on an Ohio State Highway Patrol investigation which, he asserts, "contain[s] several temporal discrepancies in describing the various times and locations of the pursing law enforcement personnel...." In addition, appellant attached to his motion affidavits from Dwyone and Brittany Hills, both of which were executed on February 20, 2001, in which they recanted their trial testimony and stated that the Prosecutor had told them to lie at trial.

Pursuant to a Judgment Entry filed on March 11, 2008, the trial court denied appellant's motion. The trial court, in its entry, stated, in relevant part, as follows:

"In reviewing all of the claims of the defendant, the Court finds that the defendant has not shown by clear and convincing evidence any valid reason for the extensive delay in filing the motion for new trial.... The Court finds that both the videotape issue and the affidavits of Mr. Hill and Ms. Hill have not timely been presented and the defendant has not met the burden of proof that the defendant was unavoidably prevented from timely filing a motion for new trial or that he was unavoidably prevented from timely discovery of the newly discovered evidence."

(Doc. 7, RX 16, at 2-5; State v. Tyson, No. 2008-CA-00068, 2009 WL 74002, at *1-*2 (Ohio Ct. App. Jan. 12, 2009).)

Tyson filed an appeal of the trial court's denial of his motion for a new trial on March 21, 2008. (Doc. 7, RX 12-13.) The court of appeals affirmed the trial court's judgment denying the motion. (Doc. 7, RX 16, at 9; Tyson, 2009 WL 74002, at *5.) Tyson appealed that decision to the Supreme Court of Ohio (doc. 7, RX 19-20), which denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question. (Doc. 7, RX 22.)

In addition, following the trial court's Mar. 11, 2008, denial of his motion for a new trial, Tyson filed a petition for post-conviction relief on June 17, 2008. (Doc.

4

7, RX 23.)  The trial court denied the petition (doc. 7, RX 26), and Tyson appealed.  (Doc. 7, RX 27-28.)  The court of appeals upheld the judgment of the trial court.  (Doc. 7, RX 31; State v. Tyson, No. 2008-CA-00253, 2009 WL 212409 (Ohio Ct. App. Jan. 26, 2009).)

Tyson filed this petition for a writ of habeas corpus on July 28, 2009.  (Doc. 1.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

### III. STATUTE OF LIMITATIONS

The respondent argues that Tyson's petition should be barred because it was untimely filed. (Doc. 7, at 10-12.)

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a state prisoner seeking a federal writ of habeas corpus to file his petition within one year after his state conviction has become "final." Carey v. Saffold, 536 U.S. 214, 216 (2002) (citing 28 U.S.C. § 2244(d)(1)(A)). The conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Thus, the one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States

6

Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari. Clay v. United States, 537 U.S. 522, 528 n.3 (2003); Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002); Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001), cert. denied, 534 U.S. 924 (2001) (citing cases).

Tyson filed his direct appeal in a timely manner. (Doc. 7, RX 4-5.) The court of appeals affirmed the judgment of the trial court in a decision docketed on Sept. 24, 2001. (Doc. 7, RX 7; State v. Tyson, No. 2000-CA-00361, 2001 WL 1141263 (Ohio Ct. App. Sept. 24, 2001).)

Tyson did not seek timely review by the Ohio Supreme Court within 45 days, pursuant to Ohio Supreme Court Rule of Practice II, Section 2(A)(1). Thus, Tyson's conviction became "final" within the meaning of AEDPA on Nov. 8, 2001. Searcy v. Carter, 246 F.3d 515, 517 (6th Cir.), cert. denied, 534 U.S. 905 (2001). Accordingly, the statue of limitations for filing his habeas petition would have expired one year later, on Nov. 8, 2002.

Tyson filed his motion for a new trial in the state courts on Nov. 26, 2007. (Doc. 7, RX 8.) By that time, the habeas statute of limitations had already expired, five years earlier. Although filing a post-conviction or collateral motion may toll the running of a pending, unexpired one-year limitations period, Souter v. Jones, 395 F.3d 577, 585 (6th Cir. 2005), it will not "revive" the statute, or cause it to begin running anew. Cordle v. Guarino, 428 F.3d 46, 48 n.4 (1st Cir. 2005); Hill v. Randle, No. 00-4168, 2001 WL 1450711, at *2 (6th Cir. Nov. 7, 2001); Searcy, 246 F.3d at 519.

7

Tyson failed to file his habeas petition within the statutory time limit.

## IV.  EQUITABLE TOLLING

Tyson contends that his untimely filing should be excused through the doctrine of equitable tolling.  (Doc. 8.)

To benefit from equitable tolling, the petitioner must show that he has been pursuing his rights diligently, and that some extraordinary circumstance stood in his way.  Lawrence v. Florida, 549 U.S. 327, 335 (2007); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  Sixth Circuit case law has consistently held that the circumstances which will lead to equitable tolling are rare.  Souter, 395 F.3d at 590 (quoting Schlup v. Delo, 513 U.S. 298, 321 (1995)); King v. Bell, 378 F.3d 550, 553 (6th Cir. Aug. 3, 2004) (citing Dunlap v. United States, 250 F.3d 1001, 1009 (6th Cir. ), cert. denied, 534 U.S. 1057 (2001)); see also Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.), cert. denied, 531 U.S. 840 (2000) (rare and exceptional).

The following factors are generally considered when the issue of equitable tolling arises:

> (1) lack of actual knowledge of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.

King, 378 F.3d at 553 (quoting Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988)).  Tyson does not rely on these factors, but rather urges the court to apply equitable tolling on the basis of "actual innocence."  (Doc. 8, at 2-3.)

## A.  Extraordinary Circumstances

The Sixth Circuit has allowed for equitable tolling based on actual innocence under certain limited and extraordinary circumstances.  McSwain v. Davis, No. 06-1920, 2008 WL 2744640 (6th Cir. July 15, 2008), cert. denied, 129 S.Ct. 2824 (2009); Souter, 395 F.3d at 597-599.  In Souter, the petitioner was able to point to new evidence, unavailable at the time of his trial, supporting a credible claim of actual innocence.  See, e.g., Souter, 395 F.3d at 583-584.  The threshold inquiry was whether the new facts raised sufficient doubt about the petitioner's guilt to undermine confidence in his conviction.  Souter, 395 F.3d at 590 (quoting Schlup, 513 U.S. at 317).  Souter stated:

> To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." [Schlup, 513 U.S. at 327].  The [Supreme] Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Schlup, 513 U.S. at 324, 115 S.Ct. 851.  The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" Id. at 321, 115 S.Ct. 851.

Souter, 395 F.3d at 590; see also Maag v. Konteh, No. 3:05CV1574, 2006 WL 2457820, at *1 (N.D. Ohio Aug. 23, 2006).

It is Tyson's burden to show that this is "one of those extraordinary cases where a credible claim of actual innocence has been established by new evidence." McSwain, 2008 WL 2744640.  The Supreme Court has emphasized that "the Schlup

9

standard is demanding and permits review only in the 'extraordinary' case." House v. Bell, 547 U.S. 518, 538 (2006) (citing Schlup, 513 U.S. at 327).

Tyson claims that the State of Ohio withheld exculpatory evidence in discovery. (Doc. 8, at 3.) He points to various dashboard videotapes which he characterizes as "newly-discovered" evidence. Id. at 4. He also claims that Trooper Smith, "the only purported witness to identify [Tyson] as the culprit in this case where 'mistaken identity' was and remains the defense," delivered "perjured trial testimony." Id. at 3, see also, id. at 5. Finally, he notes that two child-witnesses[2] who were present in the house have provided affidavits recanting their previous testimony. Id. at 4.

Tyson argues that the dashboard videotapes from the Highway Patrol cars demonstrate that Trooper Smith was four miles away "at the time of his 'identification' of Tyson." (Doc. 8, at 3.) The court notes that this assertion conflicts with the facts as established at trial, that Smith pursued the truck, driven by Tyson, which eventually hit a utility pole, at which point, "the truck stopped and the driver [Tyson] exited the same and proceeded on foot with Patrolman Smith in pursuit." (Doc. 7, RX 16, at 3; Tyson, 2009 WL 74002, at *1.)

The State, in its opposition to Tyson's motion for a new trial, had identified those portions of the trial transcript in which Smith testifies he saw the driver exit the truck, chased him, almost caught him on the street, and pursued him into a

---

[2] The court notes that the witnesses are the children of his cousin, Latonya Hill. (Doc. 7, RX 5, at 13 n.3.)

10

nearby house.  Eventually, with the assistance of bystanders, Smith was able to control Tyson until other officers arrived.  (Doc. 7, RX 9, at 5-6; see also RX 8, exh. D (witness statement of bystander).)

Tyson, on the other hand, apparently testified that he was standing around outside the house when Smith ran up and maced him.  Tyson testified he then ran into the house to escape the assault.  According to Tyson, Smith followed him into the house, pointed a gun at him, and subsequently Smith and other officers began beating him.  (Doc. 7, RX 9, at 5-6; see also doc. 7, RX 16, at 3; Tyson, 2009 WL 74002, at *1; doc. 7, RX 8, at 2.)

Although the trial testimony of Tyson and Smith apparently differed on the details of Smith's arrest of Tyson, see doc. 7, RX 16, at 2-3; Tyson, 2009 WL 74002, at *1; they agree on one point:  Smith was the officer who pursued Tyson into the house immediately after the truck crashed.  See, e.g., doc. 7, RX 8, at 2.  Given that agreement, the significance of the discrepancy of the displayed time on the two dashboard videotapes is minimal.  Tyson provides no indication that he asserted at trial or at any other point that Smith was not the person who pursued him into the house, immediately after the truck crashed, and arrested him.  See also doc. 7, RX 8, exh. D (witness statement of bystander).

Now, however, Tyson contends that the time disparities on the videotapes show that Smith was four miles away, and could not have been identified him: "Trooper Smith's testimony would have been wholly discredited by placing him four (4) miles away at the time of his 'identification' of Tyson, leaving no witness to

11

positively identify Tyson as the fleeing felon." (Doc. 8, at 7; but see, e.g., doc. 7, RX 8, exh. D (witness statement of bystander), and RX 9, at 7.)

The respondent opposes equitable tolling on several grounds: First, the respondent argues that Tyson has not alleged any "new evidence" that would establish "that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." (Doc. 7, at 14, quoting McCray v. Vasbinder, 499 F.3d 568, 572 (6th Cir. 2007), cert. denied, 128 S.Ct. 1236 (2008).) Respondent contends that none of the evidence discussed by Tyson is "new." Also, Tyson was not diligent in pursuing his claims. Id.

In support, the respondent quotes the state court of appeals decision affirming the denial of Tyson's motion for a new trial:

> The videotapes that appellant [Tyson] claims were newly discovered were played at appellant's trial in 2000 and, appellant concedes, were available for separate viewing pretrial. Appellant, in his brief, specifically concedes that the State made the videotapes available to the defense as part of discovery.
>
> * * * * *
>
> . . . by appellant's own admission, he had the separate videotapes at least two to three years before he filed his motion and had the Ohio State Highway Patrol investigation in 2002 or 2003. Appellant, however, did not file his motion until November 26, 2007.

(Doc. 7, at 15, quoting RX 16, at 7-8; Tyson, 2009 WL 74002, at *4.)

The court finds that the videotapes are not "new reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

12

physical evidence," Schlup, 513 U.S. at 324, which raise sufficient doubt about Tyson's guilt to undermine confidence in his conviction, Souter, 395 F.3d at 590.

As to the affidavits by his cousin's children recanting their testimony, the court notes that "recantations are viewed with extreme suspicion by the courts." In re Davis, 565 F.3d 810, 825 (11th Cir. 2009) (citing cases). Justice Brennan expressed this opinion on the subject:

> Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction. For these reasons, a witness' recantation of trial testimony typically will justify a new trial only where the reviewing judge after analyzing the recantation is satisfied that it is true and that it will "render probable a different verdict."

Dobbert v. Wainwright, 468 U.S. 1231, 1233-1234 (1984) (Brennan, J., dissenting from denial of certiorari). The Sixth Circuit has characterized similar affidavits as "of little value, as they merely recant their trial testimony." Carter v. Mitchell, 443 F.3d 517, 539 (6th Cir. 2006), cert. denied, 549 U.S. 1127 (2007). See also Byrd v. Collins, 209 F.3d 486, 508 n.16 (6th Cir. 2000); United States v. Lewis, 338 F.2d 137, 139 (6th Cir. 1964).

Tyson does not point to any new factual evidence which was unavailable at trial that would undermine the validity of his conviction. See, e.g., Saylor v. Mack, No. 00-4357, 2001 WL 1141294, at *2 (6th Cir. Sept. 17, 2001) (no new evidence to support actual innocence claim). See also Ross v. Berghuis, 417 F.3d 552, 555-556 (6th Cir. 2005). Where the petitioner does not provide new exculpatory evidence,

13

the case does not fit within the actual innocence equitable tolling exception of Souter v. Jones. Ross, 417 F.3d at 555.

### B. Diligence

The respondent also opposes equitable tolling on the basis that Tyson was not diligent in pursuing his claims. (Doc. 7, at 18-19.) Respondent points out that Tyson waited for five years after he obtained the "new evidence" to file anything in the state courts. Id. at 19.

The recanting affidavits were provided to counsel for Tyson and signed in February 2001. (Doc. 7, RX 8, at 7-8, and exh. R-S.) Tyson admits that he obtained the dashboard videotapes sometime between July 2002 and 2003. (Doc. 8, at 6.) Yet he states that "[n]othing of substance" was accomplished until July 2007 when he and his current counsel reviewed the videotapes. Id. Tyson filed his motion for a new trial on Nov. 26, 2007. (Doc. 7, RX 8.)

The facts show that Tyson failed to act with that reasonable diligence which would support a claim for equitable tolling.

Tyson has failed to meet his burden to show that this is one of those extraordinary cases where a credible claim of actual innocence has been established by new evidence. The motion to dismiss (doc. 7) the petition should be granted.

### V. SUMMARY

The motion to dismiss (doc. 7) the petition for a writ of habeas corpus should be granted, because Tyson failed to file his habeas petition within the statutory

14

time limit. Tyson is not entitled to equitable tolling, because he failed to demonstrate that this is an extraordinary case where a credible claim of actual innocence could be established by new evidence.

## RECOMMENDATION

It is recommended that the motion to dismiss (doc. 7) be granted, and the petition be denied.

Dated:  Jan. 26, 2010           /s/ Kenneth S. McHargh
                                Kenneth S. McHargh
                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).